## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **SHERESA BROOKS,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | |
| **v.** | | ) | CIV-19-56-HE |
| | | ) | |
| 1. | **AR & OK DIVISIONAL HQ - TSA** | ) | |
| | **D/B/A THE SALVATION ARMY,** | ) | |
| | | ) | **Jury Trial Demanded** |
| | **Defendant.** | ) | **Attorney Lien Claimed** |

## COMPLAINT

**COMES NOW** the Plaintiff, Sheresa Brooks, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.     Plaintiff, Sheresa Brooks, is an adult female, who at all times relevant hereto was a resident of Oklahoma County, Oklahoma.

2.     Defendant, AR & OK Divisional HQ – TSA d/b/a The Salvation Army is an entity doing business in and around Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (b) disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); and (c) violations of the Family Medical Leave Act ("FMLA").

1

4.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5.     All of the acts complained of herein occurred in or around Oklahoma County, Oklahoma.  Defendant is doing business in such county and may be served in such county. Oklahoma County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.     To the extent required, Plaintiff has exhausted her administrative remedies. She filed an EEOC Charge of Discrimination on or about February 3, 2018, and an Amended Charge of Discrimination on or about June 8, 2018.  The EEOC issued a Notice of Right to Sue dated December 17, 2018, which Plaintiff received by mail thereafter.  And, Plaintiff has timely filed this action within ninety (90) days of her receipt of the notice of right to sue.

## STATEMENT OF FACTS

7.     Plaintiff was born in 1962, making her over age forty (40) at all relevant times.

8.     Plaintiff was employed with Defendant for more than twenty-three (23) years.

9.     She began her employment on or about September 7, 1994.  She was hired as a Secretary and worked in that position for approximately 12 years. She was then promoted to a Divisional Statistician/HR Assistant position in or around October 2006.  She held this position for the remainder of her employment, until on or about September 22, 2017.

10.     Throughout her lengthy tenure, Plaintiff satisfactorily performed her job.  In addition to being promoted in or around October 2006, she received positive performance

evaluations.  In fact, her last evaluation (given on or about June 8, 2017) notes that she "met or exceeded" her goals for the year and that she "underst[ood] her job duties and c[ould] perform them well[.]"

11.     Despite her good work performance, Plaintiff was terminated on or about September 22, 2017.

12.     Her termination came on the heels of her notifying Defendant of certain medical impairments from which she suffered and requesting reasonable accommodations in connection with said impairments (including, but not limited to, leave time).

13.     More particularly, in or around early-2016, Plaintiff's then-supervisor, Major Thomas McWilliams, began charging Plaintiff with tasks outside her regular job duties. However, to Plaintiff's knowledge, her similarly-situated younger co-workers were not treated in this same fashion.

14.     As a result of the added workload, Plaintiff began experiencing medical problems.  She began seeking medical treatment in or around early-2016.  And, she was diagnosed with Major Depression, Anxiety Disorder and Arthritis in or around September 2016.  She was also diagnosed with Lupus shortly thereafter.

15.     Based on such medical conditions, Plaintiff is/was a qualified individual with a disability, in that, she suffers/suffered from physical and mental impairments which substantially limit/limited her ability to perform one or more major life activities, including *inter alia* her ability to think, concentrate, eat, sleep and perform certain physical tasks.

16.     Her impairments also impact/impacted one or more of her internal bodily processes, including but not limited to her cognitive, neurological, circulatory, musculoskeletal and immune systems.  Plaintiff also has/had a record of such impairments and/or was regarded as having such impairments.  At all relevant times though, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

17.     In or around September 2016, Plaintiff was required to be hospitalized for approximately one week as a result of her conditions.

18.     After she returned to work, she provided McWilliams and HR Representative Terese Allen with ADA paperwork, identifying the impairments from which she suffered, as well as the accommodations she needed (including *inter alia* a flexible work schedule and leave time for medical appointments).

19.     Despite this, at no time did Defendant engage in an interactive process with Plaintiff about providing her with reasonable accommodations.

20.     And, after returning to work, Plaintiff was required to take time off work, intermittently, to seek continuing medical treatment.  However, at no time did Defendant inform Plaintiff of her right to intermittent FMLA leave.

21.     Rather, after Plaintiff took time off for her medical conditions, McWilliams gave Plaintiff a back-dated write-up for alleged "Attendance" issues on or about June 8, 2017 (backdated to April 24, 2017).

22..    McWilliams also gave Plaintiff a "Below Expectations" rating for the topic of "Dependability" on her 2016 annual performance review (given on or about June 8, 2017).

23.    The write-up and "below expectation" rating were unwarranted.  Outside of her approved vacation, any time Plaintiff missed from work was as a result of her medical conditions.  And, as was evidenced by her performance evaluation, Plaintiff was meeting or exceeding her work goals and performed her job well.

24.    Thereafter, in or around July 2017, McWilliams received a promotion and was replaced by Major Ben Lawrence, to whom Plaintiff began directly reporting.

25.    Plaintiff told Lawrence of her medical conditions soon after he began supervising her.  She also told Lawrence of her need for leave and a flexible work schedule to receive medical care and treatment for her medical conditions.

26.    Because she was required to take time off on occasion for doctor's appointments and other medical treatment, Plaintiff asked Lawrence numerous times if she could make up her time by coming in early or staying late, beyond her regular work hours.  Yet, Lawrence failed to respond, repeatedly ignoring her requests.  And, just months later, on or about September 22, 2017, Lawrence terminated Plaintiff's employment.

27.    Lawrence stated that Defendant decided to separate her employment for attendance.  He showed Plaintiff a document, reflecting the amount of leave time Plaintiff purportedly took in 2017, said she missed too much work and had been written up twice before.  However, this was not true.

28.     Plaintiff had not been written up twice for attendance.  Other than the back-dated write-up McWilliams gave her on or about June 8, 2017, Plaintiff had not been written up for attendance.  And, as noted above, the June 8, 2017 write-up was unwarranted and retaliatory, as the only time Plaintiff missed work (outside her approved vacation) was as a result of her medical conditions.

29.     Plaintiff asked if there was anything she could do to save her job, telling Lawrence again that she was required to miss work because of her medical conditions. However, Lawrence stated that he was "sorry about her medical conditions," but there was nothing Plaintiff could do.

30.     The claimed basis for Plaintiff's termination is pretext.

31.     Lawrence fired Plaintiff just two months after she told him of her medical conditions and need for reasonable accommodations (including leave time).

32.     The time Plaintiff missed from work was due to her medical conditions.  She had not exhausted the accrued paid leave available to her at the time of her termination.  And, Defendant had a progressive disciplinary policy which was not followed in Plaintiff's termination.

33.     Moreover, upon information and belief, after Plaintiff was terminated, her job duties were performed by a significantly younger and/or non-disabled individual.

34.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I:  ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

35.     Plaintiff is entitled to relief under the ADEA because, as stated herein, she was over age forty (40); she was qualified for her job; she was discharged and her job was not eliminated after her termination.  Moreover, upon information and belief, after Plaintiff was terminated, her job duties were performed by a significantly younger individual.

36.     As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct.

## COUNT II: ADA/ADAAA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disability in violation of the ADA and ADAAA.  The matters alleged above also constitute retaliation for having requested reasonable accommodations in violation of the ADA and ADAAA.

38.     More specifically, Plaintiff was a qualified individual with a disability, in that, she suffers from impairments, described above, which substantially limit her ability to perform one or more major life activities, as set forth above.  Further, Plaintiff's disability

7

impacts one or more of her internal bodily processes, as shown herein.  And, Plaintiff had a record of a disability and was regarded as disabled because she had an actual or perceived impairment; that impairment was neither transitory nor minor; and Defendant was aware of and perceived the impairment at the time Plaintiff was terminated.

39.     Despite said impairments, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

40.     Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

41.     Moreover, Plaintiff is entitled to relief because she engaged in a protected activity (requesting reasonable accommodations in the form of *inter alia* leave time), suffered adverse actions thereafter, and a causal connection exists between her requests and the adverse actions.

42.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages as allowed by the Civil Rights Act of 1991.

43.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## **COUNT III: FMLA**

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

44.     The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family Medical Leave Act ("FMLA").

45.     Plaintiff was entitled to medical leave because she worked for Defendant, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

46.     Plaintiff suffered from a serious health condition (i.e., major depression, anxiety disorder, arthritis and lupus), requiring she seek continuing medical treatment by a medical provider.

47.     Defendant interfered with Plaintiff's rights under the FMLA by *inter alia* failing to notify Plaintiff of her FMLA rights.

48.     Defendant also retaliated against Plaintiff for her use of FMLA, writing Plaintiff up, giving her a negative score on her performance evaluation and terminating Plaintiff after taking FMLA leave, *inter alia*.

49.     As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

50.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income,

past and future, liquidated damages, based on the willfulness of Defendant's violation of the FMLA, attorney's fees and costs.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant and assess compensatory damages including but not limited to backpay, future wages and other compensatory damages, together with pre- and post-judgment interest, costs, attorney's fees, emotional distress damages, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

RESPECTFULLY SUBMITTED THIS 17th DAY OF JANUARY, 2019.

s/ Jana B. Leonard
JANA B. LEONARD, OBA# 17844
SHANNON C. HAUPT, OBA # 18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800      (telephone)
(405) 239-3801      (facsimile)
leonardjb@leonardlaw.net
haupts@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED